**AFFIRM; and Opinion Filed January 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01166-CV

### GREGORY SCOTT CUNNINGHAM, Appellant
### V.
### BOBBY ANGLIN, Appellee

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-02454-B**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Fillmore, and Justice O'Neill[1]
Opinion by Justice O'Neill

In an opinion and judgment dated August 12, 2011, we remanded this case to the trial court for a new trial on damages. *Cunningham v. Anglin*, No. 05-10-01023-CV, 2011 WL 3557951, at *5 (Tex. App.—Dallas Aug. 12, 2011, no pet.) (mem. op.) ("*Cunningham I*"). On remand, the parties tried the case before the court. The trial court rendered judgment for appellee Bobby Anglin, the agent of the landlord for commercial premises leased to appellant Gregory Cunningham. In five issues, Cunningham contends the trial court erred by awarding damages and attorney's fees to Anglin. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

---

[1] The Honorable Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

BACKGROUND

In 2001, Cunningham leased commercial premises at 3818 Dividend Drive in Garland, Texas, pursuant to a written lease agreement. After the initial term of the lease expired in 2004, Cunningham became a month-to-month holdover tenant. The parties' dispute first arose over the rent for the month of November, 2009. Cunningham contends he paid the rent for November 2009; Anglin contends he did not. The parties failed to resolve their dispute, and on March 12, 2010, Anglin notified Cunningham that the lease was terminated.

As set forth in more detail in our previous opinion, the terms of the lease provided for holdover rent of $1,800 per month, to be paid on the first of each month. *See Cunningham I*, 2011 WL 3557951, at *4. The lease also provided for a daily late charge of ten dollars per day. Anglin filed a forcible detainer action against Cunningham in justice court on March 22, 2010. *See id.* at *1. The complaint requested possession of the premises, rent due and unpaid in the amount of $6,510, attorney's fees, and costs of court. The justice of the peace rendered judgment for Anglin and against Cunningham for possession of the premises, unpaid rent, interest, and costs. Cunningham filed his de novo appeal with the county court, which rendered judgment for Anglin. On appeal, we concluded that the trial court erred in awarding damages for rent due at a rate higher than the amount of holdover rent provided in the lease. *Id.* at *4. We reversed the trial court's judgment as to damages only and remanded the case for a new trial on damages. *See id.*

The new trial was held on May 13, 2013. The principal witness for Anglin was Karla Thompson, the property manager for the leased premises. Thompson testified that Cunningham owed rent for the months of November 2009, February 2010, and March 2010. Thompson identified the lease and testified to the amounts due under it. She testified about her

communications with Cunningham about the rent due, and their correspondence was admitted into evidence.

Thompson testified that in October 2009, she communicated with Cunningham regarding three months of unpaid rent from 2008. She testified that Cunningham made payments in October 2009 on some of the past due amounts. Cunningham submitted three checks, each in the amount of $1,800, and each dated October 20, 2009. On the memo line of each check was specified "3818 Dividend" and the month for which payment was made. Although the three checks were designated for August, September, and October,[2] Thompson testified she applied the payments for July, August, and September, and corrected the memo line on each check accordingly. She sent Cunningham a copy of the corrections accompanied by a note explaining that October rent was still outstanding. She then sent Cunningham a reconciliation of the rent payments made for 3818 Dividend Drive, as well as payments made for two other units leased by Cunningham on Dividend Drive.

Cunningham paid the rent for October 2009. He also paid the rent for December, but explained to Thompson that his records showed he did not owe rent for November. He paid the rent for January 2010 under protest. He tendered $1000 for February rent, which was refused as partial payment. He did not pay the rent for March. At trial, Thompson conceded that Cunningham should have been charged $1,800 per month as holdover rent instead of $2,200 per month. *See Cunningham I*, 2011 WL 3557951, at \*4. She prepared a reconciliation that was admitted into evidence as Plaintiffs' Exhibit 25. On Exhibit 25, Thompson's calculations were made using the correct figure for holdover rent of $1,800, instead of the $2,200 that was

---

[2] Although the amounts in question were originally due in 2008, the landlord had applied subsequent payments to the oldest outstanding obligation. Therefore, the parties' dispute arose over the most recent amounts due.

originally charged.  She also calculated late fees using the $10 per day figure set forth in the lease.[3]

Cunningham testified on his own behalf.  He testified he did not owe rent for November 2009, because (1) he did not receive credit for an $800 check he wrote in 2008, and (2) he did not receive credit for payment of a $1000 invoice to repair a garage door on the premises.  Cunningham offered both the check and the invoice into evidence.  He testified that if Anglin had properly credited the $800 payment and the $1000 invoice, there would be no dispute that the November 2009 rent had been paid.

Thompson, however, testified that the $800 check had been credited toward the rent of another unit Cunningham leased, and that the tenant was responsible for repairs to doors on the premises.[4]  Cunningham countered that regardless of the written provisions of the lease, he had an oral agreement with the previous property managers that he could credit repairs and maintenance against his rent.

Anglin's counsel testified to his attorney's fees.  Cunningham objected that the trial court had no jurisdiction to award attorney's fees "[b]ecause the issue of possession had already been resolved," but the trial court overruled the objection.  Anglin's attorney testified that a reasonable fee considering the work done, the number of hours, and his hourly rate was $11,480.  He also testified to $617.10 in costs.  On cross-examination, Anglin's counsel testified that his client obtained possession of the premises on April 1 after the judgment had been entered by the justice court.  In addition, the parties stipulated that the justice court's judgment was rendered on April 1, 2010.

---

[3] Thompson also conceded at trial that the late fees originally charged were calculated erroneously as a percentage of rent, rather than the daily fee provided in the lease.  She explained, however, that her error resulted in an understatement of the late fee to Cunningham's benefit.

[4] Section 7.03.B of the lease provides in relevant part, "Tenant's Obligation to Repair. . .Tenant shall, at all times, keep all other portions of the Demised Premises in good order, condition and repair, including but not limited to repairs (including all necessary replacements) of the windows, plate glass, doors, . . . ."

While this case was pending in the trial court, before the first appeal, Cunningham filed a separate lawsuit against Anglin and others for conversion of equipment contained in the leased premises and for breach of lease based on the higher monthly rent charge challenged in *Cunningham I*. The trial court granted summary judgment for Anglin and the other defendants. Cunningham appealed, and we affirmed the trial court's judgment. *Cunningham v. Anglin*, No. 05-12-00039-CV, 2014 WL 3778907 (Tex. App.—Dallas July 31, 2014, pet. filed) (mem. op.) ("*Cunningham II*").

On May 21, 2013, the trial court rendered judgment for Anglin in the amount of $5,400 in back rent, $900 in late fees, and $11,480 in attorney's fees. The trial court denied Cunningham's motion for new trial on August 9, 2013. This appeal followed.

## STANDARDS OF REVIEW

Cunningham challenges the legal and factual sufficiency of the evidence to support the trial court's judgment. When a complete reporter's record is filed, a trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *Altus Brands II, LLC v. Alexander*, 435 S.W.3d 432, 440 (Tex. App.—Dallas 2014, no pet.). When a party with the burden of proof challenges an adverse finding, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.

2005). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Altus Brands II*, 435 S.W. 3d at 440.

In a factual sufficiency review, we consider all the evidence, setting aside the finding only if the evidence supporting it is so weak or so against the great weight and preponderance of the evidence that the finding is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242. As fact-finder in a bench trial, the trial court is the sole judge of the credibility of the witnesses. *Altus Brands II*, 435 S.W.3d at 441. We review a trial court's conclusions of law de novo. *Id.* at 440.

In the absence of formal findings of fact and conclusions of law, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam). The judgment of the trial court implies all necessary fact findings in support of the judgment. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

## DISCUSSION

### A. Damages award

#### 1. Sufficiency of evidence

In his first three issues, Cunningham contends there was no evidence, or insufficient evidence, that he owed any rent or late fees to Anglin. The trial court's judgment awards Anglin rent in the amount of $5,400 and late fees in the amount of $900. Thompson testified that Cunningham owed three months' rent, plus late fees. She relied on and was questioned about exhibits that were introduced into evidence that supported her testimony, including the lease that set forth the amount of rent to be paid each month and the applicable late fees. The trial court, as the sole judge of credibility, could have accepted her testimony. *See Altus Brands II*, 435 S.W.3d at 441. Cunningham's testimony contradicted Thompson's. He, too, relied on and was

questioned about exhibits that were introduced into evidence to support his testimony. The trial court was required to resolve this conflict in the testimony in order to resolve Anglin's claim. There was more than a scintilla of evidence offered by each party.[5] *See id.* at 440. The evidence offered by Anglin was not so weak or so against the weight of all of the evidence presented that the trial court's findings were clearly wrong or unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242.

## 2. Affirmative defenses

Cunningham argues the evidence established the affirmative defense of discharge. He contends that the obligation to pay rent in November 2009 was discharged because Thompson "intentionally altered" his rent checks. On the memo line of the checks in question, Cunningham had written the month for which he intended the payment to be applied. Thompson crossed out Cunningham's notation and indicated instead the month for which she applied the payment. She sent a copy to Cunningham explaining what she had done. Cunningham relies on section 3.407 of the Texas Business and Commerce Code, governing alterations of negotiable instruments. TEX. BUS. & COM. CODE ANN. § 3.407 (West 2002). Under section 3.407(a)(1), an "alteration" is "an unauthorized change in an instrument that purports to modify in any respect the obligation of a party." Under section 3.407(b), "an alteration fraudulently made discharges a party whose obligation is affected by the alteration."

Under section 3.407, both fraudulent intent and materiality must be established before discharge from the note is permitted. *Lawler v. F.D.I.C.*, 538 S.W.2d 245, 247 (Tex. App.— Beaumont 1976, writ ref'd n.r.e.). Whether an alteration is material is a question of law. *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 588 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "An alteration that works no change, but which leaves the terms of the contract the same as before,

---

[5] We note that the trial court's award of $900 in late fees, the equivalent of 90 days' delay under the lease, was far less than the amount calculated in Anglin's Exhibit 25. Anglin sought late fees from the date the rent was first due through the date of trial, a total of approximately $36,000.

does not vitiate it." *Id.* at 590 (quoting *Oehler v. Schammel*, 242 S.W.2d 403, 407 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.)). Material alteration is an affirmative defense on which Cunningham had the burden of proof. *See Clark v. Dedina*, 658 S.W.2d 293, 296–297 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd).

Cunningham cites four cases in support of his argument. In *First State Bank v. Keilman*, 851 S.W.2d 914, 920 (Tex. App.—Austin 1993, writ denied), the bank altered a promissory note to make the arithmetic number 12.5 percent consistent with written words "prime plus two percent." The court held that this correction did not alter the legal effect of the note and thus was not a material alteration under section 3.407. *Id.* In *Caldwell Nat'l Bank v. O'Neil*, 785 S.W.2d 840, 845 (Tex. App.—El Paso 1990, writ denied), the court held that a person had materially altered documents relating to a lien by "whiting out" the names of the issuers and replacing them with his own name. In *Barrick v. CRT Disaster Services*, No. 14-06-00853-CV, 2007 WL 2790386, at *1 (Tex. App.—Houston [14th Dist.] Sept. 27, 2007, no pet.) (mem. op.), a bookkeeper prepared 35 checks payable to herself, leaving "large blank areas" in both the numeric and text fields of the checks. She obtained her employer's signature, added numbers and text in the blank spaces to increase the amount payable, and cashed the checks. The issue in *Barrick* was the employer's liability in negligence to the service that cashed the checks, rather than any question whether the bookkeeper had materially altered the checks. *See id.* And in *Veldekens v. GE HFS Holdings, Inc.*, No. H-06-3296, 2008 WL 4425363, at *14 (S.D. Tex. Sept. 24, 2008) (mem.), the court considered whether there were material alterations to construction loan documents that would void the obligations of guarantors. The court denied summary judgment to the lender on the question whether a consolidation of the loans increased the amount secured by the Veldekens's guaranty. *Id.* at *16. The court rejected two additional arguments by

the guarantors regarding alleged material alterations, and granted summary judgment for the lender on those issues. *See id.* at *14–18.

Cunningham's cases do not address the question presented here, whether a change to a notation on the memo line of a check to show the actual application of a rent payment is a fraudulent material alteration. We conclude it is not. Cunningham's obligation under the lease was to pay each month's rent to the landlord on the first day of the month. Nothing about this obligation, the amount to be paid pursuant to it, or the negotiation of the check was changed by Thompson's change of the notation regarding the month for which the payment was to be credited. *See Burge*, 29 S.W.3d at 590 (alteration that leaves terms of contract the same is not material). In addition, Cunningham did not establish that Thompson acted with fraudulent intent. *See Keilman*, 851 S.W.2d at 921 (debtor required to present evidence regarding bank's fraudulent intent to be discharged from liability under promissory note on the basis of an alteration).

Cunningham also cites section 3.604 of the Texas Business and Commerce Code to argue that "[b]y refusing and returning Appellant'[s] tendered check for all of the moneys due on February 1, 2010, Appellee discharged Appellant's liability for the February rent." There was evidence, however, that the check tendered for February rent was a partial payment which was rejected on that basis by the landlord. Cunningham cites no authority for the proposition that the landlord's rejection of a partial payment constituted "discharge by cancellation or renunciation" under section 3.604. Under section 3.604, discharge is of "the obligation of a party to pay the *instrument*"; here, the check tendering partial payment. *See* TEX. BUS. & COM. CODE ANN. § 3.604(a) (West Supp. 2014) (emphasis added). There was no discharge of Cunningham's obligation to pay rent under the lease. Cunningham did not demonstrate that the evidence

established all vital facts in support of his affirmative defense of discharge.  *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

Cunningham also argues the evidence established the affirmative defense of waiver.  He contends that by refusing his tendered payment of February rent, Anglin waived the right to collect rent for that month.  Cunningham also contends Thompson's testimony that she would not have accepted March rent constituted a waiver, and, in any event, he ceased occupying the premises on March 12, so that the entire rent for March was never due under the lease.[6]  Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.  *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).

Cunningham's tendered payment was admitted into evidence as Defendant's Exhibit 20.  Thompson testified that she wrote the note on the exhibit stating "We cannot accept partial payments."  There is no evidence that by refusing partial payment, Anglin intended to waive his right to collect rent for the month of February.  In fact, at the time Exhibit 20 was written in January 2010, the parties were already involved in their dispute about the November rent.  Demands for unpaid rent had already been made, and continued until the filing of the forcible detainer suit in March.  There is nothing in the record indicating any intent by Anglin to do anything except collect all of the rent he believed Cunningham owed under the lease.  Cunningham did not establish all vital facts in support of his affirmative defense of waiver.[7]  *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

---

[6] There was conflicting evidence about whether Cunningham had been locked out of the premises at some point in March.  The parties agreed, however, that the justice court did not render judgment until April 1, 2010, at which point the landlord's right to possession was established.  *See, e.g., Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.) (purpose of forcible detainer action is to resolve question of right to possession of premises).  Therefore, there was evidence to support the trial court's implied finding that Cunningham owed rent for the entire month of March.

[7] *See also Hudson v. City of Mesquite*, No. 05-93-00290-CV, 1994 WL 280241, at *4 (Tex. App.—Dallas June 17, 1994, no writ) (not designated for publication) ("An unaccepted tender of rent due does not effect a cancellation of the lessor's right to recover for the unpaid rents.")

Because there was legally and factually sufficient evidence to support the trial court's judgment, and because Cunningham did not demonstrate that the evidence established all vital facts in support of his affirmative defenses, we overrule his first three issues. *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

## B. Attorney's fees

In his fourth issue, Cunningham challenges the trial court's award of $11,480 in attorney's fees to Anglin. He makes two arguments in support of this issue.

First, he contends that because possession of the premises was not an issue, Anglin may not recover attorney's fees. Citing rule 510.11,[8] Texas Rules of Civil Procedure, and section 24.006, Texas Property Code, Cunningham argues that the only attorney's fees recoverable in the county court appeal of a forcible-detainer suit are those arising from "withholding or defending possession of the premises during the pendency of the appeal." Cunningham argues that because possession of the premises was no longer an issue after the Justice Court's judgment of April 1, 2010, the trial court's award of attorney's fees incurred in the county court appeal is error.

Cunningham concedes that Texas Property Code section 24.006 allows recovery of attorney's fees to a prevailing landlord if the lease so provides. *See* TEX. PROP. CODE ANN. § 24.006(b) (West 2014). And he concedes that the lease does contain a provision allowing the recovery of attorney's fees. Paragraph 16.08 of the lease provides:

> 16.08. Attorneys' Fees. If on account of any breach or default by any party hereto in its obligations to any other party hereto . . . , it shall become necessary for the nondefaulting party to employ an attorney to enforce or defend any of its rights or remedies hereunder, the defaulting party agrees to pay the nondefaulting

---

[8] Effective August 31, 2013, the former rules governing forcible entry and detainer (Texas Rules of Civil Procedure 738 to 755) were repealed and replaced by new rules governing procedures in justice court. *See* Tex. Sup. Ct. Misc. Docket No. 13-9049, 76 TEX. B.J. 440 (Apr. 15, 2013). New rule 510, entitled "Eviction Cases," replaces the former procedures for forcible entry and detainer. *See id.* The pertinent provisions of new rule 501.11 on which Cunningham relies are unchanged from former rule 752.

–11–

party its reasonable attorney's fees, whether or not suit is instituted in connection therewith.

But Cunningham contends that an award of attorney's fees under the lease "renders meaningless" the portion of rule 510.11 limiting attorney's fees to damages relating to possession of the premises. He cites four cases in support of his argument, each of which acknowledges the limited scope of a forcible detainer action and county court appeal. None of the cases, however, address an award of attorney's fees made under an express provision of the lease as part of a landlord's claim for past due rent.[9] *See* TEX. R. CIV. P. 510.3(d) (claim for rent may be asserted in eviction case); *see also Inwood on the Park Apartments v. Morris*, No. 05-11-01042-CV, 2012 WL 4096236, at *3 (Tex. App.—Dallas Aug. 23, 2012, pet. denied) (mem. op.). In *Morris*, we concluded that a landlord's claim for attorney's fees presented a live controversy where the lease provided a contractual basis for an award of attorney's fees under section 24.006 of the property code, even though the issue of possession had become moot. *Id.* We conclude the trial court's award of attorney's fees pursuant to the lease and section 24.006 of the property code was not error.

Second, Cunningham contends that Anglin could have asserted a counterclaim for attorney's fees in Cunningham's suit for conversion of the property removed from the premises. He contends that Anglin "could have claimed reasonable attorney's fees" under his "breach of lease theory" in that case, but instead counterclaimed for attorney's fees as sanctions. Cunningham contends that our opinion in *Cunningham II* is "res judicata as to all claims for attorney's fees in this case."

---

[9] *See Whitmire v. Greenridge Place Apartments*, No. 14-09-01002-CV, 2011 WL 1413412, at *6 (Tex. App.—Houston [14th Dist.] Apr. 14, 2011, no pet.) (mem. op.) (award of attorney's fees based on section 38.001, Texas Civil Practice & Remedies Code, reversed for failure to segregate); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 451–456 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (discussion of tenant's attorney's fees arising from declaratory judgment action and tort claims); *Hanks v. Lake Towne Apartments*, 812 S.W.2d 625, 626 (Tex. App.—Dallas 1991, writ den'd) (tenant's counterclaims for unlawful retention of security deposit and for wrongful eviction in different forcible detainer action could not be maintained in landlord's forcible detainer action); *Rushing v. Smith*, 630 S.W.2d 498, 500 (Tex. App.—Amarillo 1982, no writ) (tenant could not recover damages for preparation of wheat crop or attorney's fees in defense of forcible detainer action).

Anglin did not assert any counterclaims in *Cunningham II*. Instead, Dividend Investment[10] filed a counterclaim and sought sanctions against Cunningham for filing a frivolous lawsuit. *See Cunningham II* at \*2. The trial court denied Dividend Investment's motion for sanctions in its order granting summary judgment. *Id.* Cunningham neither cites case law nor explains how the principles of res judicata would apply to bar Anglin's claim for the attorney's fees incurred in prosecuting its suit for unpaid rent in this case. *See, e.g., Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628–29 (Tex. 1992) (discussing elements of res judicata and collateral estoppel doctrines); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (party relying on collateral estoppel to prevent relitigation of particular issues must prove that facts sought to be litigated in second action were essential to first judgment and were fully and fairly litigated by adversaries). We overrule Cunningham's fourth issue.

## C. Findings of fact and conclusions of law

In his fifth issue, Cunningham contends the trial court erred by failing to enter his requested findings of fact and conclusions of law, citing rule 296, Texas Rules of Civil Procedure. Rule 296 provides that a request for findings of fact and conclusions of law in a case tried without a jury must be filed within twenty days after the judgment is signed. *See* TEX. R. CIV. P. 296. Rule 297 requires the requesting party to file a notice of past due findings and conclusions within thirty days of the original request. *See* TEX. R. CIV. P. 297.

The trial court signed the final judgment on May 21, 2013. Cunningham's request for findings and conclusions was not filed until August 22, 2013, and he did not file a notice of past due findings. Cunningham contends, however, that his request was timely because it was filed within twenty days of the trial court's August 9, 2013 order overruling his motion for new trial. He also argues that because the trial court lost plenary jurisdiction less than thirty days after his

---

[10] Dividend Investment, a company operated by Anglin, is the landlord of the premises leased by Cunningham.

request for findings, a rule 297 notice would have been "useless." He contends that in the absence of findings, he was prevented from properly presenting his case on appeal, because the record does not reveal the date on which Anglin "took effective control of the premises." *See* TEX. R. APP. P. 44.1(a)(2) (error complained of is reversible if it "probably prevented the appellant from properly presenting the case to the court of appeals"). Without that date, Cunningham argues, we cannot determine the amount of rent owed for March, 2010.

Cunningham cites no authority for the proposition that he was not required to comply with rule 296 because he filed a motion for new trial. In the cases on which he relies to argue that the trial court's failure to file findings and conclusions was error, a timely request had been made under rule 296. *See Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (appellant timely requested findings and conclusions under rules 296 and 297); *Watts v. Oliver*, 396 S.W.3d 124, 130 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (request under rule 296 was timely). In *Watts*, although the initial request under rule 296 was timely, the notice of past due findings under rule 297 was not. *See id.* Watts conceded that his notice was late, but argued that because he brought the error to the trial court's attention in sufficient time for the trial court to correct it, he preserved his complaint for appeal. *Id.* at 130–31 (discussing TEX. R. APP. P. 33.1, preservation of error). The court rejected this argument, explaining, "[w]e decline to overturn precedent from this court and the Supreme Court of Texas requiring that a party timely file its request for findings of fact and conclusions of law and its past-due notice within the time frame specified by the rules of civil procedure." *Id.* at 131.

Cunningham's request for findings of fact and conclusions of law was not timely. Without a timely request, the trial court did not err by failing to file findings and conclusions.

–14–

*See Beck v. Walker*, 154 S.W.3d 895, 902 (Tex. App.—Dallas 2005, no pet.); *Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex. App.—Dallas 2002, no pet.).  We overrule Cunningham's fifth issue.

## CONCLUSION

Having overruled Cunningham's five issues, we affirm the judgment of the trial court.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

131166F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GREGORY SCOTT CUNNINGHAM,
Appellant

No. 05-13-01166-CV          V.

BOBBY ANGLIN, Appellee

On Appeal from the County Court at Law
No. 2, Dallas County, Texas
Trial Court Cause No. CC-10-02454-B.
Opinion delivered by Justice O'Neill,
Retired[11]; Chief Justice Wright and
Justice Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee Bobby Anglin recover his costs of this appeal from
appellant Gregory Scott Cunningham.


Judgment entered this 30th day of January, 2015.

---

[11] The Honorable Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.